USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/31/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN NIEDERNHOFER,

                                   Plaintiff,

        -against-

NEAL WITTELS,

                                   Defendant.

17-CV-4451 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff, John Niedernhofer ("Plaintiff"), commenced this action on June 13, 2017 against Neal Wittels ("Defendant"), regarding the sale of a 1958 Lancia Aurelia B24S convertible (the "Lancia Car"). (*See* Compl., ECF No. 1.) Plaintiff alleges seven causes of action, including: (1) rescission; (2) breach of express warranty; (3) fraudulent misrepresentation; (4) fraudulent concealment; (5) negligent misrepresentation; (6) breach of good faith and fair dealing; and (7) unjust enrichment. (*See Id.*) Before the Court is Defendant's motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 18.) For the following reasons, Defendant's motion to dismiss is DENIED.

## Background[1]

Bring a Trailer Media LLC ("BAT") manages and operates a website (http://bringatrailer.com) dedicated to facilitating sales of motor vehicles between private sellers and third parties. (*Id.* ¶ 9.) In 2015, Defendant provided a description of a 1958 Lancia B24S convertible (the "Lancia Car") to BAT in an effort to sell the vehicle on their website. (*Id.* ¶¶ 12,

---

[1] The following facts are derived from Plaintiff's Complaint and are accepted as true for the purposes of this motion. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

15.) The description stated, among other things, that the Lancia Car had no leaks and had a full restoration completed in 2009 costing over $100,000. (*Id.* ¶ 16.) Defendant further represented that since its restoration, the Lancia Car had only been driven about 100 miles. (*Id.*) BAT placed this information in an advertisement to the website's visitors, along with approximately seventy photos of the car. (*Id.* ¶ 15.) The online auction for the Lancia Car was opened on December 15, 2015 and visitors were able to place bids for a period of seven days. (*Id.* ¶¶ 11,14.)

Motivated by the representations on BAT's website, Plaintiff placed what became the winning bid on the Lancia Car for $350,000 on December 22, 2015. (*Id.* ¶ 20.) Following the close of the auction, Plaintiff and Defendant exchanged emails and later spoke on the phone to discuss the delivery of the Lancia Car to Plaintiff's residence in California. (*Id.* ¶¶ 23–24). During the phone call, Defendant again insisted that the car did not leak fluids and "that there [was] not a drop [of fluid] on the floor." (*Id.* ¶ 25). On December 23, 2015, Defendant requested that Plaintiff overnight him a bank check in the amount of $25,000 "as a sign of good faith." (*Id.* ¶¶ 27.) Plaintiff agreed to Defendant's request and sent a check that same day. (*Id.* ¶ 28.) On December 29, 2015, Plaintiff wired the remaining balance of $325,000 to Wittels (*Id.* ¶ 29.)

On January 13, 2016, the Lancia Car was delivered to Plaintiff in California after he paid an additional $3,150 to have the car transported from New York. (*Id.* ¶ 34.) Upon delivery, Plaintiff discovered numerous cosmetic defects on the vehicle, including, *inter alia*:  (1) rust on the rear and front fenders; (2) blistering driver and passenger rocker panels with rust; (3) fuel filler area corrosion; and (4) rusted chrome around the windshield. (*Id.* ¶ 30.) Plaintiff also later discovered numerous mechanical defects, including, *inter alia*: (1) a corroded water inlet from the radiator; (2) leaking mechanical assemblies under the car; (3) leaking rear axle seals; (4) leaking axle boots spraying oil over the exhaust; and (5) potential brake failure due to oil leaking

onto the brake shoes. (*Id.* ¶ 31.) Plaintiff asserts that none of these defects, either cosmetic or mechanical, were mentioned in the description or visible in the photographs in the BAT advertisement. (*Id.* ¶ 32.) Additionally, Plaintiff discovered that the car had been driven approximately 2,253 miles since its restoration in 2009 and that the car "was not even road safe." (*Id.* ¶¶ 43, 45.) This directly contradicted Defendant's previous statements that the car had only been driven 100 miles and that the car "runs and drives very well." (Id. ¶ 45.)

Disappointed by the Lancia Car's condition, Plaintiff emailed Defendant. (*Id.* ¶ 46.) The following day, the parties had a telephone conversation during which Plaintiff "objected to the quality and condition of the Lancia Car" and sought to return it to Defendant. (*Id.* ¶ 47.) Plaintiff then had the car inspected by a professional car restoration company, Classic Showcase, and their report revealed that the cost of repairs to cure the material defects on the car would be in excess of $100,000. (*Id.* ¶¶ 50-52.) In February of 2016, through his attorneys, Plaintiff "again rejected the Lancia Car and revoked his acceptance," which was met by Defendant's refusal to rescind the contract or take back possession of the car and return Plaintiff's money. (*Id.* ¶¶ 53–54.)

Plaintiff initially filed an action in the Central District of California in April of 2016, but it was dismissed because the court lacked personal jurisdiction over Defendant. (*Id.* ¶¶ 56–58.) Plaintiff later refiled in Florida, where Defendant at one time resided. (*Id.* ¶ 59.) However, Defendant moved to dismiss on the grounds of *forum non conveniens*, lack of personal jurisdiction, and failure to properly effectuate service. (*Id*. ¶ 60.) On May 22, 2017, Defendant filed a declaration in the Florida action stating that he would consent to jurisdiction in the Southern District of New York based on his residency in Orange County. (*Id.* ¶ 62.) Following

3

this statement, Plaintiff agreed to terminate the action in Florida and proceed with his claims in this Court. (*Id.* ¶ 63.)

Plaintiff filed the present action on June 13, 2017. Defendant, proceeding *pro se*, subsequently moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, [that] 'state[s] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "While legal

---

[2] Defendant also brought the present motion pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. Defendant ostensibly viewed 12(b)(1) as the proper vehicle to argue that this action is barred by the statute of frauds. Defendant's statute of frauds argument, however, is properly raised in a 12(b)(6) motion. See *Velez v. Sanchez*, 693 F.3d 308, 331 (2d Cir. 2012) (affirming dismissal of a breach of contract claim based on the statute of frauds under 12(b)(6)).

Nevertheless, this Court will follow the well-established practice of the Second Circuit to construe arguments by *pro se* litigants liberally and interpret them to "raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)); see also *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (collecting cases). Given Defendant's *pro se* status, this Court assumes Defendant intended to raise the statute of frauds defense under a 12(b)(6) motion and will analyze it accordingly.

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

## DISCUSSION

Plaintiff raises claims of (1) rescission; (2) breach of express warranty; (3) fraudulent misrepresentation; (4) fraudulent concealment; (5) negligent misrepresentation; (6) breach of good faith and fair dealing; (7) and unjust enrichment. Defendant maintains that dismissal is proper with respect to Plaintiff's first, second, sixth and seventh claims under the statute of frauds. Defendant further contends that Plaintiff has failed to plausibly allege claims that entitle him to relief with respect to Plaintiff's third, fourth, and fifth causes of action. The court will consider each of Defendant's arguments in turn.

### I.   Statute of Frauds

Defendant first moves to dismiss Plaintiff's rescission, breach of express warranty, breach of good faith and fair dealing, and unjust enrichment claims arguing that they are barred by the Statute of Frauds. Section 2-201 of the New York Uniform Commercial Code ("UCC")[3] provides that:

> "A contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker."

N.Y. U.C.C. § 2-201(1).

---

[3] While this matter implicates choice of law concerns, *see infra* Sections II.A & III.A, regardless of which state law is applied to any particular claim, New York, Florida, and California have incorporated largely similar statute of fraud provisions for the sale of goods. *See* N.Y. U.C.C. § 2-201; Fla. Stat. § 672.201; and Cal Com. Code § 2201. Thus, the Court will forgo a choice of law analysis.

Defendant argues that no written contract exists between the parties and that as a result, Plaintiff is not entitled to set forth any contract claims. The use of this defense by Defendant is premature. "An affirmative defense, such as the Statute-of-Frauds argument, may be raised by a Rule 12(b)(6) motion only if the defense appears on the face of the complaint." *Sabilia v. Richmond*, No. 11-CV-739 (JPO), 2012 WL 213656, at *7 (S.D.N.Y. Jan. 24, 2012). Moreover, a plaintiff is not required to affirmatively allege compliance with the statute of frauds in order to properly set forth a contract claim. *Id.*; *see also Palmer v. A. & L. Seamon, Inc.*, 94-CV-2968, 1995 WL 2131, at *2 (S.D.N.Y. Aug. 13, 2015).[4] Nor is the Court "permitted to infer the lack of a writing simply because [Plaintiff] did not affirmatively allege one." *Id.*

 Here, the absence of a written agreement is not clear on the face of the Complaint. Communications between the parties regarding the exchange of the Lancia Car took place on a third party's website as well by email. It is possible that Plaintiff could demonstrate through the use of evidence that sufficient writings existed between the parties to satisfy the statute of frauds.

Even if the absence of a written agreement *was* clear on the face of the Complaint, there are a number of exceptions to the statute of frauds defense that may apply to the present action. The first exception likely applicable to this matter is the so-called "Judicial Admissions" exception contained in § 2-201(3)(b) of the N.Y. U.C.C. "Section 2-201(3)(b) states that even if there is no written contract, a contract is nonetheless enforceable "if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for

---

[4] Courts in Florida and California have also consistently found that a statute of frauds defense is only appropriate where the complaint clearly demonstrates is applicability. See *Crayola LLC v. Haymes*, No. 13-CV-23062, 2014 WL 12585652, at *2 (S.D. Fla.Feb. 25, 2014); and *Crystal Springs Upland Sch. V. Fieldturf USA, Inc.*, 219 F. Supp 3d 962, 967 (N.D. Cal. 2016).

sale was made." *Marvin Inc. v. Albstein*, 386 F. Supp. 2d 247, 252 (S.D.N.Y. 2005) (quoting N.Y. U.C.C. § 2-201(3)(b)). "Thus, if a party admits in its Answer or other pleading the existence of a contract otherwise unenforceable under the Statute of Frauds, the defense has been waived." *Boscov's Dep't Stores, LLC v. AKS International AA Corp.*, 01-CV-105880 (GWG), 2003 WL 21576405, at *5 (S.D.N.Y. July 11, 2003) (collecting cases). Here, Defendant has stated in his motion that he and Plaintiff entered into an oral agreement to purchase the car. (Def.'s Mot. to Dismiss ("Def.'s Mot.") ¶ 2.) Such a statement may constitute a binding admission, rendering the statute of frauds defense unavailable to Defendant. See *Amtrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.*, No. 15-CV-7505, 2016 WL 6561548, at *3 (S.D.N.Y. Nov. 3, 2016) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact.") (quoting *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994)).

Section 2-201(3)(c) might also be applicable to the instant case. N.Y. U.C.C. § 2-201(3)(c). It provides an exception to the statute of frauds " with respect to goods for which payment has been made and accepted or which have been received and accepted." *Id.* Based on the facts in the Complaint, the transaction between the parties could likely satisfy both conditions; Plaintiff alleges he paid Defendant $350,000 prior to the delivery of the Lancia Car to his home in California. (Compl. ¶¶ 27–28.) Taking such allegations as true, the statute of frauds would be inapplicable in the present action. *See MGR Meats, Inc. v. Schweid*, No. 10-CV-3068 (MKB), 2012 WL 6675123, at *9 (E.D.N.Y. Dec. 21, 2012) (finding the statute of frauds inapplicable where Defendant had been given possession of the purchased good and had made payments for it).

Nevertheless, the Court reserves ultimate judgment on whether these two exceptions to the statute of frauds should apply in the present matter until Defendant has an opportunity to (1)

contest the factual allegations in the Complaint, and (2) fully brief both issues, which were largely omitted from his reply brief. However, because the Court cannot infer the absence of a written agreement from the face of the Complaint and certain exceptions to the statute of frauds may apply, Defendant's motion to dismiss Counts I, II, VI, and VII is denied at this time.[5]

## II. Fraud

Defendant moves to dismiss Plaintiff's fraudulent misrepresentation and fraudulent concealment claims arguing that Plaintiff failed to adequately plead reasonable reliance. This Court disagrees and finds that Plaintiff has plausibly alleged both fraudulent misrepresentation and fraudulent concealment.

---

[5] Defendant also argues that the unjust enrichment claim should be dismissed on the grounds that it is duplicative. Rule 8 of the Federal Rules of Civil Procedure, however, allows for a party to plead alternative, inconsistent claims. Fed. R. Civ. P. 8(d). *See also Rodriguez v. It's Just Lunch, Int'l*, No. 07-CV-9227(SHS), 2010 WL 685009 at *11 ("Since the plaintiffs have not, as of yet, demonstrated the existence of an enforceable contract[], their unjust enrichment claim is not precluded, as a matter of law.") Here, there is a dispute between the parties of whether an enforceable contract existed between them. (*See* Def. Mot. ¶ 1.) Therefore, until that issue is resolved, the claim for unjust enrichment is not duplicative.

A. <u>Choice of Law</u>

Before addressing the merits of Plaintiff's remaining claims, the Court must first resolve what law applies to each claim.[6] "In diversity jurisdiction cases such as this, it is well settled that a federal court must look to the choice of law rules of the forum state." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (citing *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996)). In New York, "the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." *Winter v. Am. Inst. of Med. Scis. & Educ.*, 242 F. Supp. 3d 206, 218 (S.D.N.Y. 2017) (citation omitted). If no actual conflict exists, a choice of law analysis is not necessary.[7] *Id.*  Defendant, proceeding *pro se*, did not address the issue of whether substantive New York, California or Florida law applies to Plaintiff's claims, but relied solely on New York law in his moving papers. (*See generally* Def.'s Mot.)  Plaintiff argues that either California or Florida law applies to the negligent misrepresentation claim while New York law governs the remaining claims. (Plf.'s Opp. at 5.)

The Court finds that there is no actual conflict of law with respect to Plaintiff's claim for fraudulent misrepresentation. New York, California, and Florida law require similar elements for a fraudulent misrepresentation claim. *Compare First Hill Partners, LLC v. BlueCrest Capital*

---

[6] New York, California and Florida law are relevant to this action. The Lancia Car at the center of this dispute was located in New York, the Plaintiff resided in California, and the Defendant resided in Florida. (Compl. ¶¶ 5, 6, 26, 59.)

[7] Choice of law analysis under New York law is typically conducted separately for each claim, under a doctrine known as dépeçage. *See 2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 200 (S.D.N.Y. 2015) (citing *Fed. Hous. Fin Agency v. Ally Fin. Inc.*, No. 11-CV-7010, 2012 WL 6616061, at *5 (S.D.N.Y. Dec. 19, 2012)). "Dépeçage doctrine recognizes that in a single action different states may have different degrees of interests with respect to different operative facts and elements of a claim or defense." *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 75 (E.D.N.Y. 2000). This Court, thus, will address choice of law for each claim in turn.

*Mgmt. Ltd.*, 52 F. Supp. 3d 625, 637 (S.D.N.Y. 2014) ("Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." (citing *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2011)), *with Infante v. Bank of Am. Corp.*, 468 Fed. Appx. 918, 920 (11th Cir. 2011) (*"*a plaintiff must adequately allege: (1) a false statement by the defendant concerning a material fact; (2) the defendant's knowledge that the representation was false; (3) that the representation was made by the defendant with the intent to induce another to act on it; and (4) that the plaintiff suffered a consequent injury in reliance on the representation") (quoting *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)); *and Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 605–06, 172 Cal. Rptr. 3d 218, 228 (Cal. Ct. App. 2014) ("To establish a claim for fraudulent misrepresentation, the plaintiff must prove: (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff.") (internal quotation marks and citation omitted)). Because there is no actual conflict between New York, Florida and California law regarding Plaintiff's fraudulent misrepresentation claim, New York law will apply. [8] *See Amusement Indus., Inc. v. Stern*, 693 F.

---

[8] A claim for fraudulent concealment must meet the same requirements as one for fraudulent misrepresentation, plus an allegation that one party owed a duty to disclose. *See Doehla v. Wathne Ltd.*, No. 98-CV-6087(CSH), 1999 WL 566311 at *16 (Aug. 3, 1999 S.D.N.Y.) The

Supp. 2d 327, 339 (S.D.N.Y. 2010) ("There is no actual conflict between New York and California law concerning common law fraud because the elements of the tort in each jurisdiction are 'substantially similar.'" (internal citation omitted)); *Cohen v. Sudler & Hennessey*, LLC, 2010 WL 3431534, at *2 n.2 (S.D.N.Y. Aug. 31, 2010) (finding no conflict between New York and Florida law for fraud claim).

B.  <u>Merits Analysis</u>[9]

Plaintiff appropriately raises claims for both fraudulent misrepresentation and fraudulent concealment because he alleges that Defendant: (1) made affirmative misrepresentations about the condition of the Lancia Car, and (2) omitted information about the Lancia Car that he had a duty to disclose.

"Under New York law, the elements of common law fraud are a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." *Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999) (citation

---

application of California or Florida law would not impact the Court's analysis, as the pleading requirements for fraudulent concealment claims in those states are substantially similar to those of New York. *See Roper v. Yanni*, No. 18-CV-0489 (WQH) (KSC), 2018 WL 3584463, at *2 (S.D. Cal. July 26, 2018) (noting the "duty to disclose" element of a fraudulent concealment claim in California); *Broward Motorsports of Palm Beach, LLC v. Polaris Sales, Inc.*, 17-CV-81100, 2018 WL 1072211, at *3 (S.D. Fla. Feb. 27, 2018) (noting the "duty to disclose" element of a fraudulent concealment claim under Florida law)Thus, the Court will also apply New York law to that claim.

[9] While the rules of federal pleading typically require "a short and plain statement," *see* Fed. R. Civ. P. 8, fraud claims have heightened pleading requirements. *See* Fed. R. Civ. P. 9(b). In order to satisfy Rule 9(b), the plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (internal citation omitted). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns., v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir. 2007). Defendant does not dispute that the allegations set forth in Plaintiff's complaint satisfy the requirements of Rule 9(b).

and internal quotation marks omitted). In addition to the elements required for a fraudulent

misrepresentation claim, to prevail on a fraudulent concealment claim, a plaintiff must also

allege that a defendant had a duty to disclose omitted information. *Nealy v. U.S. Surgical Corp.*,

587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008).  A duty to disclose in a direct business transaction

arises under three circumstances:

> first, where the party has made a partial or ambiguous statement, on the theory that
> once a party has undertaken to mention a relevant fact to the other party it cannot
> give only half of the truth; second, when the parties stand in a fiduciary or
> confidential relationship with each other; and third, where one party possesses
> superior knowledge, not readily available to the other, and knows the other is acting
> on the basis of mistaken knowledge.

 *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (internal citations and

quotation marks omitted). Plaintiff does not contend that either of the first two circumstances

apply to the case at hand. (*See* Compl. ¶¶ 78–80.) Rather, Plaintiff maintains that as Defendant

had superior knowledge of the Lancia Car's condition, he had a duty to disclose that information

to Plaintiff.[10]

Presently, the only apparent element in dispute regarding Plaintiff's fraudulent

misrepresentation and fraudulent concealment claims is whether Plaintiff's reliance was

reasonable. Defendant contends that Plaintiff failed to establish reasonable reliance because

Plaintiff had a "duty to inquire" about the flaws of the Lancia Car, mainly as a result of

comments posted by other BAT website users during the time the car was being auctioned on the

website.[11] (Def.'s Mot. ¶¶ 6–17). Defendant also argues that because Plaintiff represented that he

---

[10] Defendant has failed to brief the issue of his duty to disclose. Given his *pro se* status, this
Court reserves ultimate judgment on this element until Defendant has had the opportunity to do
so. However, for the purposes of this motion, the Court assumes that Defendant does not contest
that he had a duty to disclose information regarding the Lancia Car's condition.

[11] Defendant attached various documents to his motion papers, including email communications
with Plaintiff, the comments from the BAT website, and photographs of the Lancia Car. It is not

had previously purchased many cars long distance, he should have known to have the car inspected before having it sent to his home. (*Id*. ¶ 8.)

However, this Court cannot determine whether Plaintiff's reliance on Defendant's statements was reasonable at the motion to dismiss stage. "The question of what constitutes reasonable reliance is always nettlesome because it is so fact-intensive." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). "In assessing the reasonableness of a plaintiff's alleged reliance," courts "consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003). The Second Circuit has held that where "matters are held to be peculiarly within defendant's knowledge, it is said that plaintiff may rely [on his representations] without prosecuting an investigation, as he had no independent means of ascertaining the truth," *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006) (citation and quotation omitted). At the same time, however, "[a] plaintiff cannot close his eyes to an obvious fraud, and cannot demonstrate reasonable reliance without making inquiry and investigation if he has the ability, through ordinary intelligence, to ferret out the reliability or truth" of defendant's statements. *Id.*

Here, by submitting the description of his car to BAT to be advertised on the website, Defendant agreed to BAT's Terms of Service, certifying that the written description he provided was "true," "accurate" and "complete." (Compl. ¶ 13.) Based on Plaintiff's Complaint, a reasonable trier of fact could conclude that Plaintiff reasonably relied on Defendant's representations about the Lancia Car's condition made through the BAT website without

---

appropriate, however, to consider those materials on a motion to dismiss, as the Court is confined to "the allegations contained within the four corners of [the] complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998).

conducting further inspection. *See DDJ Mgmt., LLC v. Rhone Grp. LLC*, 15 N.Y.3d 147, 154 (2010) (suggesting that a Plaintiff "will often be justified" in accepting a written representation that certain facts are true rather than making its own inquiry). Plaintiff has, thus, sufficiently alleged reasonable reliance to survive a 12(b)(6) motion. Accordingly, Defendant's motion to dismiss Plaintiff's third and fourth claims is denied.

### III. Negligent Misrepresentation

Defendant also moves to dismiss Plaintiff's negligent misrepresentation claim because Plaintiff failed to demonstrate that a special relationship existed between the parties, as required under New York law. This Court, however, applies Florida law to this claim and finds that Plaintiff has satisfied the pleading requirements for the purposes of a motion to dismiss.

A. <u>Choice of Law</u>

The elements of negligent misrepresentation pursuant to New York, Florida, and California law differ materially. Specifically, New York requires a duty arising from a special relationship, while California and Florida do not. *Compare Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) ("Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."); *with Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35, 50 (Cal. App. 1st Dist. 2009) (internal quotation marks and citation omitted) ("The elements of negligent

misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without

reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the

fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.");

*and Fojtasek v. NCL (Bah.) Ltd.*, 613 F. Supp. 2d 1351, 1355 (S.D. Fla. 2009) (To prove a claim

for negligent misrepresentation under Florida law, "a plaintiff must demonstrate (1)

misrepresentation of a material fact; (2) that the representor made the misrepresentation without

knowledge as to its truth or falsity or under circumstances in which he ought to have known of

its falsity; (3) that the representor intended that the misrepresentation induce another to act on it;

and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation."

(citing *Wallerstein v. Hosp. Corp. of Am.*, 573 So. 2d 9, 10 (Fla. Dist. Ct. App. 1990)); *see also*

*Amusement Indus.*, 693 F. Supp. 2d at 339. This difference could have a substantial effect on the

success of Plaintiff bringing his negligent misrepresentation claim. Accordingly, this Court must

determine which law to apply.

      Because negligent misrepresentation is a tort claim, the "interest analysis" is the

applicable analytical approach. *See Globalnet Financial.com, Inc. v. Frank Crystal & Co.*, 449

F.3d 377, 384 (2d Cir. 2006). Following this approach, courts "seek to apply the law of the

jurisdiction with the most significant interest in, or relationship to, the dispute." *White Plains*

*Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006) (quoting *Lazard Freres &*

*Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997)). "[T]ort laws are either

considered conduct-regulating or loss-allocating depending on their primary purposes." *Holborn*

*Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018). Here, Plaintiff's

claim of negligent misrepresentation is conduct-regulating, not loss-allocating. *See AHW Inv.*

*P'ship v. Citigroup Inc.*, 980 F. Supp. 2d 510, 522 (S.D.N.Y. 2013) *(citing Mark Andrew of the*

*Palm Beaches, Ltd. v. GMAC Commercial Mortg. Corp.*, 265 F. Supp. 2d 366, 378 (S.D.N.Y. 2003). "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013) (quoting *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993)).

"In the ordinary tort case, both the wrong and the injury t[ake] place in the same jurisdiction." *Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 739 F.3d 45, 50 (2d Cir. 2013) (per curiam) (internal quotation marks omitted).Where, however, the tortious conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, "it is the place of the allegedly wrongful conduct that generally has superior 'interests in protecting the reasonable expectations of the parties who relied on the laws of that place to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future.'" *Id.* (quoting *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 198 (1985)). Thus, in the context of conduct-regulating rules, where the wrongful conduct and the injury occur in different states, the law of the state where the conduct occurred will typically apply.

In the present action, the facts in the Complaint imply that Defendant did not become a New York resident until sometime *after* Plaintiff purchased the Lancia Car. (*See* Compl. ¶¶ 57-62.) Prior to his move to New York, Defendant was a resident of Florida. (*Id.*) The Court, therefore, may reasonably infer that Defendant was in Florida when the alleged conduct – the misstatements made by Defendant – occurred. Following the precedent set forth by the Second Circuit in *Licci*, this Court will apply Florida law.[12]

---

[12] Defendant may contend that he was located in New York at the time of the sale. On a motion to dismiss, however, the Court is constrained to the factual allegations in the Complaint. The Court acknowledges that, following discovery, evidence may suggest that Defendant was located

B.  <u>Analysis</u>

Under Florida Law, to state a claim for negligent misrepresentation a plaintiff must

allege: "(1) a misrepresentation of material fact; (2) the representor either knew of the

misrepresentation, or made the representation with knowledge as to its truth or falsity, or made

the representation under circumstances in which he or she ought to have known of its falsity; (3)

the representor intended that the representation induce another to act on it; and (4) injury must

result to the party acting in justifiable reliance on the misrepresentation." *Creative Am. Educ.,*

*LLC v. Learning Experience, LLC*, No. 9:14-CV-80900, 2015 WL 2218847, at *4 (S.D. Fla. May

11, 2015).[13]

"All that must be alleged in a suit for negligent misrepresentation is not that the

representor intended to make a false statement, but rather that the representation was made under

circumstances in which its falsity should have been known." *Wallerstein*, 573 So.2d at 10. Based

on the facts within the Complaint that describe the Lancia Car's condition when it was received

by Plaintiff in California, it is clear that Defendant should have known the car was not in

"excellent condition," as he had previously represented in the advertisement on BAT's website.

(*See* Compl. ¶¶ 26, 31–32, 43, 45.) Moreover, the inclusion of these representations on BAT's

website, which promoted the sale of the car, satisfies the third prong—Defendant likely intended

that the representation induce third parties to purchase the car. Finally, as already discussed,

---

in New York when the misrepresentations were made. Defendant could then appropriately re-
assert his challenges to Plaintiff's negligent misrepresentation claim under New York law.

[13] Courts in the Eleventh Circuit have consistently held that claims for negligent
misrepresentation must meet Rule 9(b)'s heightened pleading requirements because they
"sound[] in fraud rather than negligence." *See Pruco Life Ins. Co. v. Brasner*, No. 10-80804-CIV,
2011 WL 2669651, at *4 (S.D. Fla. July 7, 2011) (citing *Souran v. Travelers Ins. Co.,* 982 F.2d
1497, 1511 (11th Cir. 1993)). Because the negligent misrepresentation claim is based on the
same allegations as the fraud claims, Plaintiff has again satisfied the standard of Rule 9(b).

Plaintiff has sufficiently alleged that he reasonably relied on the representations, which caused his alleged damages. *See supra*, Section II.B.

Defendant's argument that Plaintiff's negligent misrepresentation claim "should be dismissed for lack of a special relationship" (Def.'s Mot. ¶ 2) is inapposite, as Florida law does not require a special relationship for such a claim. *See Fojtasek*, 613 F. Supp. 2d at 1355.

Accordingly, Plaintiff has sufficiently alleged negligent misrepresentation under Florida law to survive a 12(b)(6) motion. Therefore, Defendant's motion to dismiss with respect to this claim is also denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to dismiss is denied in its entirety. Defendant is directed to file an answer to the Complaint on or before August 30, 2018. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 18. The Clerk is also requested to mail a copy of this Opinion to pro se Defendant and file proof of service on the docket.

Dated: July 31, 2018
      White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge